489 A.2d 1286

**MUNICIPAL PUBLICATIONS, INC., D. Herbert Lipson and Alan Halpern**

v.

**COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY.**

**Appeal of James Reginald EDGEHILL.**

Supreme Court of Pennsylvania.

Argued Jan. 23, 1985.

Decided March 27, 1985.

M. Mark Mendel, Jonathan Bennett, Philadelphia, for appellant.

David H. Marion, Philadelphia, for Mun. Publications, D. Herbert Lipson & Alan Halpern.

Howland Abramson, James J. Binns, Philadelphia, for appellee.

Before NIX, C.J., and FLAHERTY, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

We have assumed jurisdiction of this matter to decide whether a judge should be disqualified from presiding over a hearing on a recusal motion raising factual allegations as to his impartiality which, if proven, would require his recusal, where the judge has personal knowledge of disputed facts and permits himself to be a crucial witness in the proceedings. We have concluded that, in such circumstances, a judge must recuse himself and the issue of impartiality must be litigated before and decided by another judge.

### I.

The instant appeal arises out of a libel action instituted by appellant James Reginald Edgehill against Municipal Publications, Inc., D. Herbert Lipson and Alan Halpern, appellees, in 1972. The case was tried before the Honorable Bernard Snyder of the Philadelphia Court of Common Pleas, sitting without a jury, from April to October, 1982. On March 14, 1983, appellees filed a motion for Judge Snyder's recusal accompanied by an affidavit from appellee Lipson alleging the judge's bias in favor of counsel for Mr. Edgehill. That motion has never been ruled upon.

Judge Snyder initially referred the recusal motion to the Motions Court but, on May 4, 1983, vacated that order and scheduled a hearing before himself. On May 6, 1983, Judge Snyder entered a verdict of Seven Million Dollars ($7,000,-000) in favor of Mr. Edgehill. The hearings on the recusal motion extended from May 23 to July 13, 1983. Judge

Snyder gave testimony during the proceedings over which he presided.

On October 24, 1983, appellees filed a petition for writ of prohibition in the Superior Court. That court granted the petition on November 30, 1983, barring Judge Snyder from proceeding on the recusal motion and directing the President Judge of the Court of Common Pleas to request this Court to appoint a judge from another county to decide the motion. *Municipal Publications, Inc. v. Snyder*, 322 Pa. Super. 464, 469 A.2d 1084 (1983). By order dated December 13, 1983, then-Chief Justice Samuel J. Roberts approved the appointment of the Honorable Thomas D. Gladden of the Court of Common Pleas of Washington County to dispose of all proceedings in the libel action. Mr. Edgehill, who opposed the issuance of a writ of prohibition in the Superior Court proceedings,[1] filed a petition for allowance of appeal and/or the assumption of plenary jurisdiction in this Court on March 5, 1984. That petition was granted on August 22, 1984. While our original order granting review did not so specify, in view of the extraordinary nature of the instant case, we hereby assume plenary jurisdiction.

## II.

In reviewing the action of the Superior Court we must consider the threshold question of whether that court had jurisdiction to entertain a petition for writ of prohibition in light of the procedural posture of the instant matter. While the Superior Court has been vested with broad appellate jurisdiction, *see* 42 Pa.C.S. § 742, its original jurisdiction is extremely limited. Section 741 of the Judicial Code provides:

### § 741. Original jurisdiction

The Superior Court shall have no original jurisdiction, *except in cases of mandamus and prohibition to courts*

---

1. Mr. Edgehill styled himself as "qua-respondent" in that action. While we note that no such designation exists under our rules of procedure, our assumption of plenary jurisdiction obviates the issue of Mr. Edgehill's standing.

*of inferior jurisdiction where such relief is ancillary to matters within its appellate jurisdiction,* and except that it, or any judge thereof, shall have full power and authority when and as often as there may be occasion, to issue writs of habeas corpus under like conditions returnable to the said court.

42 Pa.C.S. § 741 (emphasis added).

Our decision in *Bell Appeal,* 396 Pa. 592, 152 A.2d 731 (1959), which interpreted the predecessor of section 741,[2] accurately delineates the scope of the Superior Court's jurisdiction in prohibition matters:

> The Superior Court derives all of its jurisdiction and powers from statute. See *Duquesne City v. Fincke,* 269 Pa. 112, 115, 112 A. 130; *Commonwealth v. Long,* 276 Pa. 154, 156, 120 A. 125; *Commonwealth ex rel. v. Speer,* 267 Pa. 129, 134, 110 A. 268; cf. *Pittsburgh v. Pierce,* 69 Pa.Superior Ct. 520, 524. Hence, no right of appellate review exists in that court in any instance except it be expressly authorized by statute. Particularly significant is the fact that the Superior Court does not possess the powers of the Court of King's Bench. See *Delaware County National Bank v. Campbell,* 378 Pa. 311, 316, 106 A.2d 416; cf. also *Martonick v. Beattie,* 383 Pa. 168, 171, 117 A.2d 715. No statute confers such powers upon the Superior Court except for *the purely incidental right to issue a writ of mandamus or prohibition to a court of inferior jurisdiction ancillary to proceedings pending in the Superior Court under its appellate jurisdiction, i.e.,* by appeal authorized by statute. See Act of May 21, 1941, P.L. 47, 17 P.S. § 181, Pkt.Part.

*Id.,* 396 Pa. at 598–99, 152 A.2d at 734 (emphasis added).

**2.** The Act of June 24, 1895, P.L. 212, § 7, as amended by the Act of May 21, 1941, P.L. 47, § 1, 17 P.S. § 181 (repealed 1963), provided in pertinent part:

> The Superior Court shall have no original jurisdiction, except in actions of mandamus and prohibition to courts of inferior jurisdiction where such actions are ancillary to proceedings within its appellate jurisdiction, . . . .

*See also Pennsylvania Labor Relations Board v. Butz,* 411 Pa. 360, 192 A.2d 707 (1963); *Commonwealth v. Harris,* 409 Pa. 163, 185 A.2d 586 (1962); *Turtle Creek Borough Audit,* 401 Pa. 201, 163 A.2d 876 (1960).

■ Section 741 vests the Superior Court with jurisdiction to issue a writ of mandamus or prohibition only where *an appeal properly within its appellate jurisdiction is pending before that court and where the issuance of such a writ is necessary to protect that court's appellate jurisdiction. Bell Appeal, supra; Pennsylvania Labor Relations Board, supra; Commonwealth v. Harris, supra; Turtle Creek Borough Audit, supra.* In the instant matter no appeal was pending before the Superior Court and that court's appellate jurisdiction was not being infringed upon by Judge Snyder's actions. Thus there was no predicate for the Superior Court's exercise of jurisdiction.

■ To interpret the Superior Court's mandamus and prohibition jurisdiction as extending to all actions pending in the Court of Common Pleas in which a final order would be appealable to the Superior Court would be unreasonable. Given the numerous classes of cases over which the Superior Court has appellate jurisdiction, to hold that that court has the power to intercede in matters which have not advanced to the appellate stage would be tantamount to giving the Superior Court broad King's Bench powers. This the legislature has not done. Rather, the onus of general superintendence over the courts of this Commonwealth has been allocated to this Court. Pa. Const. Art. V, § 10(a); 42 Pa.C.S. § 502; *Wilson v. Blake,* 475 Pa. 627, 381 A.2d 450 (1977); *In re Franciscus,* 471 Pa. 53, 369 A.2d 1190 (1977); *Commonwealth ex rel. Specter v. Shiomos,* 457 Pa. 104, 320 A.2d 134 (1974); *Commonwealth v. Caplan,* 411 Pa. 563, 192 A.2d 894 (1963); *Commonwealth v. Harris, supra; Bell Appeal, supra; Commonwealth v. Onda,* 376 Pa. 405, 103 A.2d 90 (1954); *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 61 A.2d 426 (1948); *Meadville Park Theatre Corp. v. Mook,* 337 Pa. 21, 10 A.2d 437 (1940); *Shafer v. Cascio,* 288 Pa. 56, 135 A. 639 (1927);

*Schmuck v. Hartman,* 222 Pa. 190, 70 A. 1091 (1908); *Commonwealth v. Shortall,* 206 Pa. 165, 55 A. 952 (1903); *Chase v. Miller,* 41 Pa. 403 (1863); *Gosline v. Place,* 32 Pa. 520 (1859); *Carpenter's Case,* 14 Pa. 486 (1850); *Commonwealth v. Nathans,* 5 Pa. 124 (1847). The legislature has limited the Superior Court's original jurisdiction to instances in which an appeal has been lodged in that court and it becomes necessary to mandate or prohibit action by a lower court in aid of the Superior Court's effective exercise of its appellate jurisdiction.

We conclude, therefore, that the Superior Court was without jurisdiction to entertain a prohibition action in the instant case. The order granting a writ of prohibition must be vacated. This Court, however, has assumed jurisdiction over the entire matter and may nonetheless grant relief. Thus we will proceed to evaluate the merits of the contention that Judge Snyder should be disqualified from ruling on the recusal motion.

### III.

The Code of Judicial Conduct, adopted by this Court in 1974, requires a judge to "avoid impropriety and the appearance of impropriety in all his activities." Code of Judicial Conduct, Canon 2. The Code further requires that a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. Code of Judicial Conduct, Canon 3 C. The Code also enumerates certain situations in which a judge should disqualify himself. *Id.* Among these situations are instances where

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; [or]

. . . .

(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

. . . .

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

*Id.*

At this stage we emphasize that we are not deciding whether Judge Snyder should be disqualified from presiding over the underlying libel action. We are concerned only with whether he may properly take evidence and rule on the motion for his recusal under the unique circumstances presented by this matter. The allegations on which the recusal motion was based focused upon a purported personal relationship between Judge Snyder and counsel for plaintiff Edgehill in the libel suit, and specifically upon alleged *ex parte* discussions between them in chambers concerning the case, including the recusal motion. Taken as a whole those allegations, if true, would require Judge Snyder's disqualification from the libel action and necessitate a new trial. *See Commonwealth v. Darush,* 501 Pa. 15, 459 A.2d 727 (1983) (recusal required wherever there is substantial doubt as to jurist's ability to preside impartially); *Commonwealth v. Boyle,* 498 Pa. 486, 447 A.2d 250 (1982) (same); *Commonwealth v. Knighton,* 490 Pa. 16, 415 A.2d 9 (1980) (same); *Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976) (same); *Commonwealth v. Goodman,* 454 Pa. 358, 311 A.2d 652 (1973) (same); Code of Judicial Conduct, Canon 3 A(4) (judge must not consider *ex parte* communications concerning pending proceedings).

■ The crucial aspect of the disqualification proceedings is the fact that Judge Snyder actually permitted himself to be called as a witness and decided to give testimony concerning his own conduct. Thus he not only had personal knowledge of disputed facts but was in a position to rule on objections to his own testimony and to assess his own credibility in light of conflicting evidence. Under such extraordinary circumstances, it was clearly inappropriate for Judge Snyder to preside over the recusal hearing.

■ Where the disqualification hearing brings in question the credibility of the judge, it is obvious that the judge is

not in the position to maintain the objective posture required to preside over the proceeding and to assume the role of the trier of fact in that proceeding. *See Commonwealth v. Darush, supra* (judge should recuse himself whenever he has any doubt as to his ability to preside impartially); *Commonwealth v. Boyle, supra* (same); *Commonwealth v. Knighton, supra* (same); *Commonwealth v. Perry, supra* (same). *Commonwealth v. Goodman, supra* (same).

■ This does not mean that we will permit a party who is dissatisfied with the progress of the trial mid-stream to arbitrarily attempt to cause the disqualification of the presiding judge. Judge shopping has been universally condemned, and will not be tolerated at any stage of the proceedings. *See, e.g., Commonwealth v. Ryan,* 484 Pa. 602, 400 A.2d 1264 (1979); *Commonwealth v. Prado,* 481 Pa. 485, 393 A.2d 8 (1978); *Commonwealth v. Schab,* 477 Pa. 55, 383 A.2d 819 (1978); *Craig v. .W.J. Thiele & Sons, Inc.,* 395 Pa. 129, 149 A.2d 35 (1959); *Linn v. Employers Reinsurance Corp.,* 392 Pa. 58, 139 A.2d 638 (1958). Thus, where fabricated, frivolous or scurrilous charges are raised against the presiding judge during the course of the proceeding, the court may summarily dismiss those objections without hearing where the judge is satisfied that the complaint is wholly without foundation. In such case the complaining party may assign the accusation as a basis for post-trial relief and, if necessary, a record can be developed at that stage and in that context. Where, as here, a judge concludes that the allegations justify an evidentiary hearing in which he will testify, it then becomes incumbent upon that judge to step aside for the appointment of another judge to hear and rule upon the issue of disqualification.

Because Judge Snyder must be disqualified from deciding the recusal motion, that motion must be assigned to another judge for disposition. Since Judge Gladden has previously been appointed in this matter, we direct that he conduct new hearings to receive all evidence of the parties on the

question of disqualification and render a decision on the recusal motion.

Accordingly, the Order of the Superior Court is vacated and the cause is remanded to the Court of Common Pleas of the First Judicial District for further proceeding in accordance with this opinion.

LARSEN and McDERMOTT, JJ., did not participate in the consideration or decision of this case.

HUTCHINSON, J., joins the majority opinion and files a concurring opinion.

ZAPPALA, J., joins the majority opinion and files a concurring opinion.

HUTCHINSON, Justice, concurring.

I join the majority opinion but write to reiterate the views expressed in my Concurring Opinion filed this date in *Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985).

ZAPPALA, Justice, concurring.

While I join in the majority opinion authored by Chief Justice Nix, I am writing separately to emphasize that a recusal motion historically has been intended and should continue to be used as a pre-trial guarantee for a fair and impartial trial. Should a party have reason to believe *ab initio* that a trial judge cannot conduct an impartial trial, a recusal motion is proper. If in reviewing such motion a trial judge is of the belief that an evidentiary hearing is required then, as the majority correctly holds, the appointment of another judge to conduct the evidentiary hearing and rule upon the issue of disqualification is appropriate. Likewise, as the majority announces today, should the trial judge find no merit in the recusal petition, the trial judge may summarily dismiss the petition. In the event a recusal motion is denied, a litigant can protect against a partial trial through the use of the trial record, by using the record to establish the trial judge's partiality if such be the case.

Finally, if a litigant learns of facts after completion of the trial which bring into issue the trial judge's partiality, then that litigant must preserve that issue in the post-trial motions as he would any other legal issues that may be raised in exceptions or appeals. In this way the appellate court can adequately review the challenge to the trial judge's impartiality as any other trial error preserved for appeal.